UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSHUA RECASNER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-2220** |
| **ROBERT TANNER, WARDEN** | **SECTION: "J"(3)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Joshua Recasner, is a state inmate incarcerated at the Rayburn Correctional Center in Angie, Louisiana. Pursuant to a plea bargain, he pleaded guilty to forcible rape under Louisiana law and was sentenced to a term of thirty years imprisonment on March 18, 2014.[1]

On March 27, 2015, petitioner filed an application for post-conviction relief with the state district court.[2] That application was denied on June 1, 2015.[3] On November 5, 2015, the Louisiana

---

[1] State Rec., Vol. 1 of 2, minute entry dated March 18, 2014; State Rec., Vol. 1 of 2, guilty plea form.
[2] Although petitioner's post-conviction application was not dated, his supporting memorandum was file-stamped by the clerk of court on March 27, 2015. State Rec., Vol. 1 of 2. Moreover, in his federal application, petitioner acknowledges that his state post-conviction application was in fact filed on that date. Rec. Doc. 1, p. 3, answer to Question No. 11(a)(3).
[3] State Rec., Vol. 1 of 2, minute entry dated June 1, 2015.

Fourth Circuit Court of Appeal denied his related writ application.[4]  The Louisiana Supreme Court then likewise denied relief on September 23, 2016,[5] and denied reconsideration on December 5, 2016. [6]

Petitioner filed the instant federal habeas corpus application on March 3, 2017.[7]  The state filed a response arguing that the application is untimely.[8]  The state is correct.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final."  28 U.S.C. § 2244(d)(1)(A).[9]  On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme

---

[4] State v. Recasner, No. 2015-K-1058 (La. App. 4th Cir. Nov. 5, 2015); State Rec., Vol. 2 of 2.
[5] State v. Recasner, No. 2015-KP-2212 (La. Sept. 23, 2016); State Rec., Vol. 2 of 2.
[6] State v. Recasner, No. 2015-KP-2212 (La. Dec. 5, 2016); State Rec., Vol. 2 of 2.
[7] Rec. Doc. 1.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner has declared under penalty of perjury that he placed his application in the prison mailing system on March 3, 2017.  Rec. Doc. 1, p. 15.
[8] Rec. Doc. 7.
[9] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.
   Out of an abundance of caution, the Court expressly notes that 28 U.S.C. § 2244(d)(1)(C), which delays the commencement of the statute of limitations until "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," does **not** apply in this case.  Although petitioner cites Martinez v. Ryan, 566 U.S. 1 (2012), in support of his claims, Martinez did not constitute a new rule of constitutional law made retroactive on collateral review.  See In re Paredes, 587 Fed. App'x 805, 813 (5th Cir. 2014) ("[T]he Supreme Court has not made … Martinez … retroactive to cases on collateral review …."); Barnes v. Attorney General State of Louisiana, Civ. Action No. 16-5986, 2017 WL 2601933, at *8 n.30 (E.D. La. Jan. 4, 2017) ("Martinez … do[es] not constitute [a] new rule[] of constitutional law made retroactive on collateral review to start a new one-year statute of limitations period under the AEDPA."), adopted, 2017 WL 2599193 (E.D. La. June 15, 2017).  In addition, Martinez did not address or provide an excuse for the untimely filing of a federal habeas petition.  See Arthur v. Thomas, 739 F.3d 611, 631 (11th Cir. 2014) ("[W]e also hold that the reasoning of the Martinez rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); Smith v. Rogers, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. July 2, 2014); Falls v. Cain, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. June 13, 2014).

2

>    Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
>    Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See Foreman, 383 F.3d at 338-39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

As noted, petitioner pleaded guilty and was sentenced on March 18, 2014. Because he did not file a direct appeal within the thirty days allowed by state law,[10] his conviction and sentence became final no later than April 17, 2014. Accordingly, his period for filing a federal habeas corpus application commenced on that date and then expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

After three hundred forty-three (343) days elapsed, petitioner tolled his federal limitations period by filing a post-conviction application with the state district court on March 27, 2015. Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004). Here, the state concedes that petitioner's related

---

[10] Under Louisiana law, a criminal defendant has thirty days to file a motion to appeal his conviction or sentence. La. Code Crim. P. 914.

3

appellate court filings were timely and that tolling continued until the Louisiana Supreme Court denied reconsideration on December 5, 2016.[11]

When the limitations period then resumed running at that point, petitioner had twenty-two (22) days remaining. Accordingly, he had until December 27, 2016, either to again toll the limitations period or to file his federal application.

Petitioner filed no other applications for "State post-conviction or other collateral review." Therefore, he clearly is not entitled to further *statutory* tolling.

The Court must next consider *equitable* tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (internal quotation marks omitted); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

Here, petitioner faults his state post-conviction counsel for not filing his post-conviction relief application earlier. However, counsel's actions were not improper – the state application was filed within both the state and federal limitations periods – and clearly did not "prevent" petitioner from seeking federal relief in a timely manner. After the state post-conviction proceedings concluded, petitioner still had sufficient time remaining on the federal limitations

---

[11] See Rec. Doc. 7, pp. 3-4. A petitioner receives no additional tolling credit for the period during which he could have sought review by the United States Supreme Court with respect to the denial of post-conviction relief. Lawrence v. Florida, 549 U.S. 327, 332 (2007); Ott v. Johnson, 192 F.3d 510, 512-13 (5th Cir. 1999).

period to file a timely federal application. The fact that he failed to do so is his own fault, not that of his state post-conviction attorney, and it is clear that "equity is not intended for those who sleep on their rights." Mathis v. Thaler, 616 F.3d 461, 474 (5th Cir. 2010) (quotation marks and brackets omitted). In light of that fact, and because petitioner has brought forth no other evidence demonstrating that he is entitled to equitable tolling, he has not met his burden of proof to establish that he is entitled to such tolling.

Lastly, the Court also notes that the United States Supreme Court has held: "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). However, the Supreme Court expressly cautioned: "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

By entering his unconditional guilty plea, petitioner has already admitted under oath that he in fact committed and was guilty of the crime of which he stands convicted. Therefore, even if McQuiggin applies in the context of a guilty plea, petitioner faces a daunting burden to present a credible "actual innocence" claim. Specifically, the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- *whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence* -- that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324 (emphasis added).

In the instant case, petitioner does contend that he is actually innocent. However, although he offers new evidence in support of that contention, his evidence is not of the type or caliber referenced in Schlup. Rather, he primarily points to the fact that testing of the rape kit, which included two vaginal swabs, two rectal swabs, two oral swabs, and a genital swabbing gauze collected from the victim on the date of the incident, was negative, revealing no evidence that the victim had engaged in sexual intercourse with him.[12] That simply does not constitute evidence of *innocence*. Although Louisiana law requires an act of "intercourse" for a conviction of forcible rape, *any* sexual penetration, *however slight*, is sufficient to complete the crime and *emission is not necessary*. See, e.g., State v. Bryant, 110 So.3d 1191, 1195 (La. App. 5th Cir. 2013). Therefore, medical, scientific, or physical evidence is unnecessary to sustain a forcible rape conviction. State v. Williams, 926 So.2d 665, 671 (La. App. 5th Cir. 2006); State v. Hebert, 443 So.2d 620, 623-24 (La. App. 3rd Cir. 1983). Accordingly, the fact that testing of the rape kit did reveal the presence of semen or petitioner's DNA is not proof that the rape did not occur or that petitioner is actually innocent. See Holland v. Anderson, 583 F.3d 267, 275 n.6 (5th Cir. 2009); McAffee v. Procunier, 761 F.2d 1124, 1127 (5th Cir. 1985) ("[T]he evidence from the rape kit is not as favorable to McAffee as McAffee would like this Court to believe. The kit only demonstrated that there were no seminal stains, spermatozoa, or blood stains. It did not prove, as McAffee argues, that no rape occurred. Consequently, *the evidence does not establish McAffee's innocence, it merely fails to prove his guilt*." (emphasis added)); Bembo v. Jones, Case No. 3:15cv194, 2016 WL 4994971, at *4 (N.D. Fla. Apr. 28, 2016) (evidence that lab results found no spermatozoa "is not exculpatory -- in other words, it does not constitute new reliable evidence that Petitioner did not actually commit the acts which constituted the crimes"), adopted, 2016 WL

---

[12] Rec. Doc. 1, pp. 30-31.

6

5024211 (N.D. Fla. Sept. 16, 2016); Robinson v. Dretke, No. 3:03-CV-1898, 2005 WL 900945, at *4 (N.D. Tex. Apr. 18, 2005) (Although results from "rape testing revealed no seminal fluid or spermatozoa, such revelation does support a claim of actual innocence.  An individual may be guilty of sexual assault whether or not he leaves seminal fluid or spermatozoa behind." (citation omitted)), adopted, 2005 WL 1131531 (N.D. Tex. May 10, 2005).

Petitioner also points to inconsistent statements apparently made by the victim to examining physicians.  Specifically, in their physician notes, one physician stated that the victim denied she had been penetrated, while another physician documented that the victim claimed that she had been penetrated.[13]  However, that, too, is insufficient for petitioner to meet his burden. While an inconsistent statement might be of some value at trial for impeachment purposes, it is not in and of itself evidence of actual innocence.  See e.g., Jahagirdar v. United States, 653 F. Supp. 2d 125, 130 (D. Mass. 2009) ("While the grand jury testimony might have been used as a prior inconsistent statement to impeach Hogaboom, it is not evidence of Jahagirdar's actual innocence."); see also Crayton v. Cain, Civ. Action No. 02-2162, 2013 WL 5305673, at *5 (E.D. La. Sept. 19, 2013) ("Although the defense might have been able to cast some doubt based on the seemingly inconsistent statements, a petitioner does not make a colorable 'actual innocence' claim simply by showing that, in light of his new evidence, his guilt is questionable or that reasonable doubt is conceivable." (quotation marks omitted)); cf. Schlup, 513 U.S. at 329 ("The meaning of actual innocence … does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty.").

For these reasons, petitioner has not met "the threshold requirement" for McQuiggin to apply, i.e. a showing that "'in light of the new evidence, no juror, acting reasonably, would have

---

[13] Rec. Doc. 1, pp. 32-33.

voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 133 S. Ct. at 1928 (quoting Schlup, 513 U.S. at 329). Accordingly, McQuiggin does not aid him.

Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than December 27, 2016, in order to be timely. Because his federal application was not filed until on or after March 3, 2017, it is untimely and should be dismissed on that basis.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application seeking habeas corpus relief filed by Joshua Recasner be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[14]

New Orleans, Louisiana, this twenty-fifth day of July, 2017.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[14] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.